Case number 13-3368, Dennis McGuire v. Warden Chillicothe Correctional Institution. Argument not to accede, 30 minutes per side. Mr. Bonnert, you may proceed for the appellant. Good afternoon, your honors, and may it please the court. My name is Alan L. Bonnert, and I am here representing the appellate petitioner, Dennis McGuire, today. Your honors, the district court at page 7 of its opinion noted that to reopen his case under Rule 60b-6, following the Supreme Court's decision in Martinez v. Ryan, McGuire needed to show three things. First, that Martinez applied in Ohio in general. Second, that Martinez actually applied to McGuire's case itself. And third, that the circumstances in question here do in fact constitute extraordinary circumstances necessary to establish 60b-6 relief is warranted. To that end, I have three primary points that I hope to present and discuss with the court today that demonstrate why the district court abuses discretion in denying McGuire's Rule 60b-6 motion. First, the Supreme Court's decision in Trevino v. Thaler makes clear that Martinez does in fact apply in Ohio, and the district court erred as a matter of law to the extent that it found otherwise. Second, the district court denied McGuire's 60b-6 motion on the basis that Martinez did not apply to McGuire's specific case. McGuire's underlying claim of IAC for failure to investigate and present mitigation evidence was not raised in the Intermediate Court of Appeals in the Ohio State Courts, and it necessarily depends on evidence outside the record. So under state law, the only way that McGuire was able to receive a meaningful review of that mitigation IAC claim was to raise it in a post-conviction proceeding. So the district court's reasoning that the claim was raised on direct appeal and therefore Martinez did not apply is in error, and the district court abuses discretion in denying the motion on that basis. Are you saying that Martinez applies in all cases in Ohio now, or just cases where you have to have evidence outside the record? Your Honor, the issue in McGuire's case specifically is an issue of evidence outside the record. So that's what we are arguing here, that Martinez does in fact apply in Ohio at least to the cases that under Ohio law must be raised in a post-conviction petition and not in direct appeal. And certainly the instances where the IAC claim depends on evidence outside the record, that is one of those situations, even under Ohio law, that must be raised in a post-conviction petition, not in a direct appeal. So the third point that I was hoping... What would you say about the 60B6 point, that it has to be extraordinary, and we have these cases that say changes in law don't suffice under 60B6. How do you deal with that? Your Honor, that was exactly my third point, is that there are extraordinary circumstances here. And the issue here... Let me just say it again. Gonzalez, U.S. Supreme Court decision says, and we have several Sixth Circuit decisions saying, a change in law does not suffice for 60B6 relief. Your Honor, in the Sixth Circuit, the rule is slightly different than what the rule, at least in the Fifth Circuit, as articulated in Ibarra v. Thaler and Adams v. Thaler. Gonzalez did not necessarily say that, as a matter of law, a change in decisional law can never be extraordinary circumstances. And the Sixth Circuit, in following that, has likewise held that ordinarily, or in most cases, a change in law by itself is not sufficiently extraordinary to justify 60B6 relief. But there are two points to that. First, the change in law in this particular situation, first in Martinez and then in Trevino, those two cases independently and especially together are hugely significant. In fact, the State has already conceded as much in the briefing to the United States Supreme Court in Trevino, where they joined a brief that said that in cases or in states where it applies, Martinez is a sea change in habeas law. Didn't the Fifth Circuit, though, rule that it wasn't big enough of a sea change, this very change? No, Your Honor. The Fifth Circuit actually, the decision in Adams v. Thaler, was actually a decision that was dictated by Fifth Circuit precedent, which says that a change in law can never constitute extraordinary circumstances. And that's the distinction between what the Sixth Circuit's rule is and what the Fifth Circuit's rule was that drove... My point is it happens sometimes but not often. Does this rule work in reverse? So someone who got relief in habeas, there's a change in law. Can the prosecutor come back and say, 60B6, we want this person back in jail? They got out and they shouldn't have gotten out. Does it work in the other direction is my point. Your Honor, I guess I'm not sure in that situation because I don't know that I'm aware of any case where the prosecution has filed a 60B6 motion to reopen a habeas case in instances where... One doesn't need to have an example. The question is whether it's a symmetric rule or not. You want to say there's been a change in law which helps your client and you want to benefit from it, even if you're saying you're agreeing you can't always get the benefit of it. I'm just asking, does the rule work in reverse? I mean, law changes over time in both directions. Sometimes it helps criminal defendants and sometimes it hurts them. Correct, Your Honor. You can have a change in law after someone's been released which shows they should never have been released. And I'm saying, does 60B6 allow the state to come back and say, this person belongs in jail? Your Honor, I guess in theory, I guess you could say that that would be the case. I guess maybe an analogy would be after the Supreme Court's decisions in Harrington v. Richter and Cullen v. Pinholster and cases like that, I am aware of cases where the district courts had previously granted evidentiary hearings or previously allowed expansion of the record in federal habeas to add evidence for the federal court's consideration during habeas that following Pinholster and following Harrington, the federal court said, well, after these cases, we can't consider that evidence anymore. So I guess that would be maybe an analogy. But the point here is that the change in law that was affected by Martinez and then again affected even more so by Trevino, it has to be seen as a significant change in law. In fact, Justice Scalia in his dissent in Martinez complained of as much. The fact that… Is it true that I'm looking at a more recent Fifth Circuit case, Diaz v. Stevens, which interprets Adams and seems to say that even in light of Trevino, you still have to go through some additional equitable factors. You can't just say it's a huge change in the law. Do you agree with that? Well, again, Your Honor, yes. I would agree that that is the law in the Fifth Circuit that by itself… I'm sorry? You would say that's not the law we should apply or even under that law you would win? I'm not saying that that would be the law that this court should apply. I'm just simply saying that in the Sixth Circuit, that's not a hard and fast rule. But more importantly, in this case, we don't have just the change in law. What do we have in addition? Well, in this case, Your Honor, we have the circumstances of McGuire's case. The decisions in Martinez and Trevino are predicated on the Supreme Court's concern with protecting the bedrock principle of the right to effective assistance of counsel. And here we have a situation where the mitigation in effective assistance claim that McGuire has that has currently never been reviewed by any court at any time is, in fact, a significantly compelling case. And, in fact, the state does not contest that that case… It's never been reviewed with evidence outside the record. Correct. It's never been properly given… It's not like they never thought about it. Well, Your Honor, the… Is that true? The claim…there was a claim raised on the direct appeal to the Supreme Court. It sounds very much like your brief, actually, the claim that they raised. But, Your Honor, under… They say there was ineffective use of additional relatives, right? Correct. Testimony of additional relatives? Yes. But it's thrown out for lack of extraneous evidence. But it's a little bit strong to say that nothing like that was ever raised to the court. Well, we have two different potential postures where the state has argued that the claim may or may not have been raised. One would be on the direct appeal. And, in that case, there is no merits ruling of the claim because the claim was never raised in the District Court of Appeals. This is a case that predates the change in Ohio law that sent a capital case directly to the Supreme Court of Ohio. So, in this case, a claim for ineffective assistance of counsel for failure to raise mitigation was never raised in the Intermediate Court of Appeals. And, under State v. Williams, the 1977 case from the Supreme Court of Ohio, the court was very clear that an issue that was not raised at the trial court level or in the Intermediate Court of Appeals cannot be considered or would not be considered on the merits. Are we talking on direct appeal now or are you talking about on a collateral appeal? This is on direct appeal, which is the basis. Is there a discussion of this issue in the Supreme Court on direct appeal or am I reading the record wrong? There's no discussion of the merits of the mitigation IAC claim in the direct appeal proceedings, Your Honor. There was some briefing on the claim in the Supreme Court of Ohio. The claim was never raised in the Intermediate Court of Appeals. But they said it was waived, but then they went on to kind of discuss it on the merits, right? Well, Your Honor, not necessarily. They did say it was waived, correct, but they did not review the merits of the mitigation IAC claim. They reviewed the merits of the appellate IAC claim. But to find that appellate counsel were not deficient, they have to find that the underlying claim was not valid, right? Well, all the Supreme Court of Ohio said was that appellate counsel was not ineffective because the Intermediate Court appellate counsel acted properly by not raising the claim because there was no evidence in the record. And that's the entire point, that this is a case, this is a claim, that relies necessarily on evidence outside the record. So it could not have been raised and given meaningful review with all the evidence, as Martinez and Trevino go to. It could not have been raised on direct appeal and given a full merits decision. And the fact that there was a review of the appellate IAC claim, as this Court has found in Wogenstall and some other cases. It discusses such issues as to whether there should have been a defense psychologist. What does? I'm sorry. This opinion of the Supreme Court of Ohio that we're talking about now. It doesn't just say they didn't raise it properly full stop. I mean, it goes through and talks about some of the underlying issues, not based on evidence outside the record. I understand that. That's your point basically, right? I mean, there was some... You have to state the claim as not ineffective assistance of counsel, but whether ineffective assistance of counsel that needs to be shown by evidence outside the record, has been raised, right? And Your Honor, you're exactly right. And that's the point that Martinez and Trevino were so focused on. And there's language in both of those opinions that emphasizes the critical significance of having the time, having the... That's why I'm saying if all you're talking about is something that always applies whenever Trevino applies, then basically you're saying the change of the law is automatically enough to get Rule 60B. That's the concern I have. Does that make sense? I think it makes sense, Your Honor, but I guess what I'm suggesting is that there is a different way that this Court can rule that 60B relief is appropriate here. And that is that it's not just the change in law. It's the change in law plus the fact that his mitigation IAC claim is so compelling. How is that different from saying there's a change in law and the change in law makes a difference here? Which is what... If it doesn't make a difference here, the change in law is not going to be here nor there. And if it does... And if it is sufficient every time it makes a difference, that's in effect saying the same thing as the change in the law is sufficient. Your Honor, I think there certainly could be instances where there is a change in law for instance in this case, in Martinez and Trevino, where the change in law might apply, but it doesn't make a difference. The Court in Martinez... You're saying if it doesn't make a difference, then the change in law isn't sufficient for Rule 60B. Certainly, and that goes to one of the factors... Is there any situation where it might make a difference, where it's nonetheless not extraordinary enough to be under Rule 60B? And you would say no to that then, right? As long as it makes a difference, it's extraordinary. No, that's not what we're saying, Your Honor. That's what I'm asking. Is that what you're saying? That's not what I'm saying. So what would be an example? Because it seems like you're... And now when I say, well, what is it that's special about this that makes it different from those things, those examples where it makes a difference but it isn't extraordinary, you tell me that it makes a difference. Your Honor... Is that what I'm asking? I guess I'm not quite sure I'm following because our... I thought you were saying it's extraordinary because it makes a difference, but then you go and say even though it makes a... It doesn't... Not everything that makes a difference is extraordinary, but you can't say both of those. I guess perhaps I might have stated it inartfully. I guess let me give you an example of what I'm trying to say, which is the court in Martinez and Trevino was... The ineffective assistance of post-conviction counsel applies to excuse the default of any ineffective assistance of counsel claim. It has to be a substantial ineffective assistance of counsel claim. So when we have IAC claims that are not substantial, such that they wouldn't satisfy the Martinez test anyway, we can have the change in law and it might apply to that situation, but it's not going to be significant. It's not going to be extraordinary as to that case because the petitioner in that case wouldn't be able to do anything with Martinez or Trevino. One way to help us on this is to identify some 60B6 cases where there was a change in decisional law, which is part of the calculation for granting relief, but then something else was going on. What cases are those where it's a 60B6 relief, one of the key premises is change of decisional law. The court goes ahead and grants relief nonetheless, despite the ordinary rule because of X. What are those cases and what's the X? Well, Your Honor, I guess the first case that is cited in our brief is the Thompson case out of the Sixth Circuit where there was a change in law. This is the Judge Sir Heinrich's case? That's Judge Sir Heinrich dissented, I believe. Yeah, yeah, no, okay. That's a pretty extraordinary case. It is, Your Honor. It's a case in which the change in law happened, I believe it was approximately four years before the issue. Now that I think about it, the premise of that case was not a change in decisional law. That was someone going back and realizing they'd gotten it all wrong. As I understand it, Your Honor, it was a change in the state law that applied in federal habeas to determine whether a claim had been fully exhausted. And because there was a clarification of state law that effectively said that the claim in question had in fact been exhausted, that change was made. In that instance, 60B relief was warranted. Specific for Martinez, two cases that I can point Your Honors to is the Landrum case out of the Southern District of Ohio where 60B relief was granted following Martinez. And also there's a case called Barnett v. Roper out of the Eastern District of Missouri in which the case granted not only 60B relief but also Rule 59E relief. What's the other reason in each case? The other reason? You're agreeing that change in decisional law is not by itself enough. That's the norm. Yes. You've got to find something else. This is kind of the thing Judge Rogers was going back and forth. What's the something else in those cases? Because if there isn't something else, it sounds to me like they were wrongly decided. Right. I guess in Landrum, as I recall, the extraordinary circumstances were essentially that the court had, if I recall correctly, the court in that case in the prior proceedings had actually recommended granting relief on the particular claim that was then ultimately found to be procedurally defaulted. So that claim was a significant claim, a significant claim of ineffective assistance of counsel that Martinez and Trevino spoke directly to as far as the issue in that case, a substantial IAC claim that was found procedurally defaulted based on the ineffectiveness of post-conviction counsel and then the claim should have been able to have been heard on the merits for the first time in federal habeas. I would summarize what you've just said as change in decisional law allows 60B6 relief as long as the underlying constitutional claim or the underlying error was not harmless. That's what I hear you to be saying. No, Your Honor. I don't think it's that the error was not harmless. I think it's that the error or that the claim was itself substantial as Martinez and Trevino require. And so because in that situation the claim should have been in all for the interests of fairness and equity articulated in Martinez and Trevino, the claim should have been reviewed for the first time by any court by sending it back and allowing the district court to do the same. In Barnett, the court also found that the underlying claim was in fact substantial and also found that in cases like Adams v. Thaler, that was a situation where the change in law, again, was the ruling on no change in law equals no extraordinary circumstance, that that was a Fifth Circuit rule. And so that was what drove that particular decision. In order to have a Trevino claim, it has to be substantial though, right? Yes, Your Honor. So the concern I have with accepting your argument, which we might, is that there's really no 60B hurdle other than whether you win on your Trevino claim. If you go into court years after, and not just in capital cases, you go into court and you say there's a Trevino violation, you can do that because it doesn't have to be a particular kind. Nothing else needs to be shown other than there's a Trevino violation because by definition it's substantial. So we just go straight into court and argue your Trevino claim. Is that correct? I don't know that I would go that far, Your Honor. And the reason I say that is because in the Blue Diamond Coal case and other 60B cases from this circuit, the circuit has said, look, the 60B-6 analysis is a very case-specific, fact-specific intensive analysis of what does justice require in this particular case. And there could be myriad factors that would go into showing that the circumstances in a particular case are sufficiently extraordinary. And I know the Ninth Circuit has... I hate to take all of your time on the Rule 60B. I wonder if you could address just how much, just how different the new affidavits are from what testimony was actually before. What the jury heard? Yes, exactly. Yes, Your Honor. Because you could argue that it's basically that the mother's relationships were abusive, that young McGuire acted like the man in the house, and he didn't do well in school. That was presented, right? Certainly, Your Honor. What more is there? Is it just like more egregious examples of the same thing? Or is there something sort of qualitatively, quantitatively different that if we are making some sort of equitable determination of whether this is a gross miscarriage of justice? Certainly, Your Honor. Our contention is that the evidence that the jury did not hear paints an entirely different picture of what the true scope of the mitigation is. In general, how is it different, I guess? Well, for instance, the jury heard none of the evidence about the brain damage that Mr. McGuire suffers from. Brain damage is a type of mitigation evidence at the Supreme Court, and this Court has found tremendously significant. That requires you to say you get two experts, right? Because there was an expert. There was an expert who was retained at some point during the lead-up to trial, but really was only actually consulted over the weekend between when the culpability phase hearing ended on a Thursday, I believe, and mitigation started on Monday morning. Counsel first really substantively consulted with the psychology expert who testified over that weekend. The psychologist expert talked to one or two family members during breaks in the trial. Did she say she needed more time? No, Your Honor. The psychology expert who testified was never asked about any kind of brain damage issues, was never asked about anything related to that, was simply asked to opine on the meaning of Mr. McGuire's school records, for example. Well, and this gets back to Judge Rogers, your specific point, that the jury heard, well, McGuire, he didn't like school. He dropped out because it was hard and it was difficult for him. What the jury didn't hear is the evidence that Mr. McGuire has a 27-point differential between his verbal and his performance IQ scores, which suggests compelling evidence of brain damage of his entire left hemisphere, which controls how one resolves interactions with other people, whether one acts impulsively or whether one tries to use communication and language to resolve a particular situation. The jury never heard about the frontal lobe damage to Mr. McGuire's brain. They never heard about the fact that he had the umbilical cord wrapped around his neck at birth at home without a doctor that could well have led to starvation of oxygen at birth. They never heard about the fact that he had closed head injuries, a history of that. The jury never heard about the fact that this is a child who was so malnourished from age 3 to age 12 that his belly was distended, like we see in the pictures on television of starving orphans. His belly was so distended that kids picked on him because they thought he was fat. It wasn't that he was fat. It was that he was so severely malnourished. And at such a critical age, that's the kind of thing that affects one's brain development. The jury never heard any of that. The jury never heard about things like his mother fed him sugar water as an infant and then cornmeal as a toddler because she couldn't afford formula and she didn't know that she should breastfeed her child. So we have a child at the most critical ages of brain development who's being given sugar water, and the jury never heard any of this. So especially when we had one juror at least that we know of who on the paltry mitigation evidence that was presented, that at least one juror thought that was enough, there's a substantial argument here that... Counselor, I see your time. Just one quick question just so I can stop thinking about it because I think I've got a mistake in my head in terms of this. Normally when you have new rules, they don't apply retroactively to final cases. What's different here about this case? Is it because this is a new rule about procedural default and therefore you're outside the norm? Because normally you know the normal point, right? The normal point is if you have a new decision about here's what the Sixth Amendment means, you don't apply it to finally decided cases absent meeting this exceptional test. So we don't have to worry about that here because this is just about procedural default? Is that the point? Well, I don't think we need to worry about that in this case, Your Honor, because that doctrine as in the statute and case law applies to new rules of constitutional law. And the Supreme Court in this case was very explicit that they were not adopting a new rule of constitutional law. But it is kind of because it's about how you do ineffective assistance claims. I mean without the ineffective assistance point, that's all that was going on in those two cases. Without the ineffective assistance of trial counsel or the ineffective assistance of post-conviction counsel, Your Honor? I'm making the point that in Martinez and Trevino, that's all that's going on. They're ineffective assistance claims, right? Correct. So I just don't understand why the normal rules of you don't apply new interpretations of the Constitution, i.e. how Sixth Amendment claims are raised retroactively. What am I missing? Your Honor, I think it's not necessarily a question of how they're raised as much as a question of whether they're going to be able to be reviewed substantively on the merits or not. So it's a new rule of procedural default, and new rules of procedural default do apply retroactively. I mean, I'm helping you. I mean, I guess if that's where we're going to go. I mean, the Supreme Court said in Martinez that the rule obviously applied in Martinez. And in that case, that would be effectively a retroactive application of that, and same in Trevino. So, I mean, I don't know. Here we have a case being. . . Okay, all right, anyway. We're thinking about it. Was Trevino wasn't a Rule 60B motion, was it? No, I don't believe Trevino was. Ballantyne v. Thaler and Haines v. Thaler were both stays of execution granted on Martinez issues on 60B-6. But under the logic of Judge Sutton's progression there, the idea is, technically, that if you had the chance to try to get the law changed just as well as the people who successfully got it changed, I mean, that may be harsh in the facts of your case, but that's the theory of saying we don't allow you to go back and rule and reopen cases that have been decided based on a change in the law. But, of course, the people who actually litigated it get the benefit of the change because they are the ones who made it. And if I may just address that real quick, Your Honor. I see my time is up. The court in Barnett actually did address that particular factor and said that that can't be held against the petitioner because to do that would essentially require every petitioner now going forward to raise every conceivable claim, and that's obviously not an efficient use of resources on the judicial side or on the petitioner side. So in conclusion, Your Honor, we would ask that this court hold that Martinez and Trevino do apply as a matter of law in Ohio and to McGuire's case specifically, find that the district court abuses discretion by denying McGuire's 60B-6 motion and grant McGuire's Rule 60B-6 motion remand to the district court with a stay of execution so that that court can consider and hear evidence on the Martinez arguments and his underlying substantive mitigation IAC claim. Thank you. Thank you. May it please the Court, Seth Kessler on behalf of the warden. I think it's already been pointed out, the issue in front of the court is whether or not the district court abuses discretion in denying the 60B motion. And we start off with the premise under Gonzales and a few other cases that a change in decisional law, usually by itself, is not enough to warrant 60B-6 relief. But aren't there extraordinary circumstances where you can? There have been. You know, Thompson was a situation where the court opened up, allowed the 60B-6 motion to be granted. But that was a very different case than here. In that case, the court took a painstaking approach to point out the fact that what they were doing was they were allowing a state court to interpret its own state procedural rule, and that actually was in line with the ADEPA deference standard. Here, we're talking about a federal constitutional decision, not an Ohio state law. So that would be the difference in that context. The other important part about looking at this case is how the steps McGuire took or didn't take that kind of go against his substantial or his reasonableness of showing the extraordinary circumstances. McGuire had the opportunity during the pendency of Martinez to go ahead and to raise it to the Supreme Court. Even after the decision, he waited five and a half months to bring the Martinez issue to the district court. They say they can't do all these things and look up the law and keep up with petitions for cert or anything like that. Well, I mean, that's kind of the basic, I mean, people appeal cases all the time. The basic premise of appealing and preserving issues, just like Martinez did, I mean, he, like Judge Roger pointed out, you get the benefit of being the one that goes forth with the issue. But even if you say, well, he couldn't have watched, you know, all the cert petitions, and Martinez wasn't, when it came out, it wasn't a subtle issue that, you know, easily slid out there. As he pointed out, it was a sea of change, I believe was the quote. What would have lost under Trevino, I mean, under Martinez, but not under Trevino? How quickly did they act after Trevino? Trevino came out in, I believe, May. And? And I'm trying to think of when his petition, when he filed his brief. You read the law. It was May 2013. And I'm trying to, his brief here, I believe, was, one second. Before Trevino. It was March 29, 2013. So Trevino came out after. I see. But. If they did it the day after Trevino, they would have been prompt. But by doing it before Trevino, they weren't prompt. No, but that's a good point. As far as it relates to Martinez and stuff, which was the underlying issue. I mean, Trevino was a clarification on Martinez. But it still doesn't. It was an important one for Ohio, though, right? Well, no, not necessarily because, as was pointed out, in Ohio, you do have the ability to raise an ineffective assistance counsel claim on direct appeal. But you would agree that you can't raise them if evidence outside the record is necessary? If evidence outside the record is needed, yes. And that's their whole argument here is that evidence outside the record was needed, right? Right. But there have been cases in Ohio where ineffective assistance mitigation was raised on direct appeal. An attorney does have to make the decision on appeal whether or not he makes that choice. In this case. What percentage of cases, out of curiosity, on ineffective assistance are done direct? The outside the record is the Murnahan proceeding. Is that right? Yes. Okay. So what percentage go outside the record and what don't on ineffective assistance claims in criminal cases? I don't know if I can give you an exact answer. How about just a rough, just based on your experience? I mean, I would say a greater deal of the cases go to post-conviction. They look for evidence outside the record would be probably the majority. But quite frankly, it would be kind of guessing. I mean, I don't know that for a stated fact. But based on my experience of cases I've seen, that is what happens. What happens if counsel raises ineffective assistance of counsel on direct appeal and then wants to attack it on collateral attack by bringing in matters outside the record there? If he's trying to raise the same claim and just adding additional information, he would be barred from it in post-conviction on residue to collateral grounds. Did that happen here or did they put in additional matters here? What he did was he raised it on post-conviction, didn't bring it outside the record, and he was denied for not supporting the claim with any additional information. And something significant, he never appealed the denial of his first post-conviction petition. Just like when the claim was up in habeas, he abandoned this ineffective assistance of counsel claim when the magistrate issued his R&R finding the claim procedurally defaulted. McGuire never wrote an objection to that claim. The district court found he specifically had abandoned the claim. I want to see if I understand your answer to Judge Siler's question. If the post-conviction counsel came in with extra evidence, affidavits and so forth, he would have been thrown out even so because you raised it earlier? Because you raised it earlier without extra evidence, you can't put in the extra evidence in the first instance on collateral appeal? Is that what you're saying? If you're making the same claim. How do you define whether it's the same claim then? If one claim is based on the record and the other is claimed on stuff outside the record, is that two different claims or is that the same claim? It depends on what you're raising. For example, in McGuire specifically, on direct appeal, when he attempted to raise it in the Ohio Supreme Court, his ground was he needed a mitigation expert testimony during the proceedings and he needed more family people to testify as to his family upbringing. When he went to his first post-conviction petition in the trial court, he said I needed mitigation testimony, psychiatric reports and more family testimony to talk about the background. In that situation, you'd be raising the same claim. So what is it here? Is it the same claim or a different claim here? He raised the same claim in direct appeal as he attempted. So your argument then is that post-conviction trial counsel, no matter what he did, he couldn't have succeeded on the claims that he brought. Whether he added additional evidence or not, it could not have been brought. It was harmless, whatever his... The argument is that he or she, I don't know, was ineffective for not putting in at that point additional evidence, right? Once he made the decision to raise it on direct appeal, when he procedurally defaulted the direct appeal proceedings, yes, the post-conviction... It doesn't matter, in other words, how effective or ineffective he was because if he had brought in all the evidence in the world, he still would have gotten it thrown out because it was brought earlier by court of appeals counsel on direct appeal. Yes, that he wouldn't have been able to proceed with that. But again... You don't make that argument in your briefs, though, or you do? No, no. The main issue in the brief was the fact that we are under this abusive discretion standard by the district court and the fact that the decisional law, the Gonzalez cases and the Stokes cases all have said that a change in decisional law by itself doesn't constitute extraordinary circumstances. What constitutes extraordinary circumstances besides what we see in the Thompson case? Anything else that you can think of? Does the fact that it's a capital case have any effect on that? No. I would argue that in a capital case, the issue of finality is actually perhaps that it's most important to give respect to the judgments, the finality of the judgment when this court issued its mandate on the habeas petition. I mean, I certainly think it's consideration because it's clearly black-letter law that death is different, but I think finality in this situation... You're probably going way uphill on that one. I just can't believe there's a single U.S. Supreme Court decision that says we respect the state's interest in finality more in capital cases than in other cases. No, I'm not saying more, but I'm saying that it doesn't necessarily... I apologize for myself. You said it in your brief, too. Well, I said that finality is an important consideration in capital cases because until the case is final, the judgment can't be enforced, and that has to be a consideration, or that should be a consideration in reviewing it, but I don't think it constitutes extraordinary circumstances where it plays completely to the side of the petition. I think maybe I'm asking a variation on Judge Rogers' question, but I'm just curious, is the state of Ohio taking a position on how Trevino works? I mean, what's the state of Ohio's position on Trevino? So take a non-Rule 60b-6 case, or take this very case. Last time around, had this all been raised in first federal habeas? Are you guys taking the view, well, we think after Trevino, you do excuse procedural default on ineffective assistance from your counsel at the collateral stage? Is that the position you're taking? I think it would become a much different discussion. But haven't you guys filed briefs on Trevino? I mean, it was decided a long time ago. There must be a brief out there that tells us what the state of Ohio says Trevino means for the Ohio system. I don't believe at this point we've actually had a clean Trevino issue where it hasn't come up in the issue of a 60b motion, at least on appeal. I haven't seen one where we've had to. What do you think the state's position is going to be? The Trevino is the Texas system is just too similar to the Ohio one, not to apply Trevino. I would think that the position of the state is the fact that you can, just as McGuire did, you can raise it in both places. We don't have the same. I believe Trevino, one of the reasons why it came out, was saying that Texas' system was systematically, it was almost impossible. Although they had this mechanism there, it was really just cosmetic and it didn't work. It didn't really give them a fair chance. That's why I was asking that earlier question. It sounds like Ohio is similar, that most people go the Murnaghan route. That would be my impression. Again, I think the state of Ohio argument would be the fact that, I don't remember the exact statistics in Trevino, what the Texas court said, but the percentage of cases that were allowed. I think Ohio has a much more lenient rule than Texas. Again, that's getting into a conversation without this 60B, abuse of discretion standard. That's really kind of an important thing here of where we are with this case procedurally. The fact that the issue is a 60B motion, whether or not the district court abused its discretion when it reviewed McGuire's petition. Our position really is that it's not an abuse of discretion because he falls in line with the fact that you have Gonzales and Stokes where both those petitioners would have, a case was decided later, had a procedural barrier to their petitions being heard when the ruling came out. If they had had their cases earlier, they would have had access to it. The court said those procedural barriers being removed, they did not benefit from that particular position. Here, it's a similar circumstance that a procedural barrier was removed, McGuire should kind of fall in the same Gonzales, Stokes type settings. Do you admit that a lot of this information from the affidavits filed by the petitioner is much greater than what was put in evidence at the time of the trial? There's more information. Some of it's duplicative. I think some of it is just a repeat of some of the things the mother said specifically about her frequent boyfriends and stuff. What about malnutrition? Anything about malnutrition in there? She talked about them being poor. I don't believe the record where she specifically says they... It's not the same thing as having sugar water instead of milk, exactly, to say that they're poor. Like I said, some of the information is different, but again, some of the information... Your brief just basically didn't address all of those distinctions. Should we just therefore assume that if we get that far, that there is a significantly stronger case if counsel had gotten some of this evidence into the record? I actually don't think the court ever really needs to get to that point because... I understand, but you can argue it one way, which is you don't need to reach it, or you can argue that you don't need to reach it and if you reach it, they'll lose anyway, but you seem to be saying you don't need to reach it and you better not reach it because if you do, they'll win. Is that your position? No. Then why not? Well, because the psychologist's testimony about his prison record and his education, the mom's testimony, although there may have been additional information, there's nothing in the record that shows that it was due to a lack of investigation that this information was brought up, and again, the Ohio Supreme Court, through the guise of ineffective assistance of appellate counsel, did review the underlying ineffective assistance of trial counsel at mitigation. They didn't have this evidence that I guess you're conceding is different, or you're not. I would say that most of the information was duplicated. Some of the stuff was different. I don't think it would have made a... Was all the stuff that your opposing counsel raised, was it different or was it referred to? To the extent of the brain damage, no, that was not raised in the direct appeal, and the specific talk about the sugar water was not. The mother did testify about the multiple boyfriends and the fact that they were poor, but no, those specific facts are different than what was raised. But once again, just to repeat it, I believe because we're under the guise of a 60B motion, and it's a question of whether or not the district court abused its discretion, with Gonzales, with Stokes, and even the matter of having Avensby-Thaler talk about specifically the 60B motion in Martinez, and he reaffirmed it after tribunal that these didn't represent a change in decisional law, it was just a change in decisional law, it doesn't constitute reopening a 60B motion under extraordinary circumstances. Our position would be that the court should fall in line with those and affirm the district court's decision. Thank you, counsel. Thank you. Your Honor, just very briefly, I do want to correct or to judge Sutton, you had mentioned that Murnahan proceedings are the proceedings in which ineffective extensive counsel claims based on evidence outside the record can be raised in Ohio State Court. That's actually not exactly the situation. Murnahan is for raising ineffective assistance of appellate counsel claims that obviously could not have been raised on the direct appeal where the alleged ineffectiveness occurred. Ineffective assistance claims from trial IAC that are dependent on evidence outside the record is in a state postconviction proceeding, not in a Murnahan proceeding. What does Trevino do to Murnahan claims while I've got you? Your Honor, that's still an unsettled question in the Sixth Circuit, obviously. I asked their position. You have an institutional situation. What's your view or your institution's view? I don't know that I am able to speak for the Capitol Habeas Unit on this issue, but I would say that as Justice Scalia explained in his dissent in Martinez, the reasoning and the rationale that drives the decision in Martinez as to trial IAC is equally applicable to appellate IAC. In fact, the Ninth Circuit recently found in a case called Winn v. Curry that Martinez does in fact apply to the ineffective assistance of appellate counsel. Isn't it strange in this case that they actually raised all this stuff on direct appeal? It just seems like you have to do what your client needs, so I get that, but it seems like not such a great vehicle for extending Trevino. This is a case where they did raise these claims. So it's clearly not a Martinez situation, and it doesn't seem much like a Trevino one because Exhibit A for this not being a state where you're discouraged or it's improbable or it's very unlikely that you could effectively bring the ineffective assistance claims on direct appeal here. They did it, and it turns out they raised the same topics, didn't have all the same evidence, but raised the same topics. Your Honor, we would submit that under Ohio law. The court brief really doesn't examine Trevino. It just assumes Trevino applies to Ohio, but I think it's jumping over a pretty big point here. For Ohio in general or for McGuire's case specifically? Both. Well, in Ohio, it would seem to be clear that Trevino has to have at least some effect because under Ohio law there are at least two different types of claims or two different situations where ineffective assistance of counsel claims must by law be raised only in a post-conviction case. How is Ohio going to work, and what's your argument going to be for a case like this one in the future? So in the future what happens is on direct appeal you raise, it's just like this case. They raise ineffective assistance, didn't do enough investigation and mitigation. Later on they come up with more evidence. What will you say then? You'll say you get both? Your Honor, it's not clear. But, I mean, that's really important for this case. That's what we have in front of us. Your Honor, the avenue to decide this particular case on that particular issue is to go with the fact that the claim, the mitigation IAC claim, may have been briefed in the Supreme Court of Ohio, but it was never raised at all in the first direct appeal proceeding. But, I mean, if you can't give me a theory by which today, post-Trevino, you would have a plausible way of getting through procedural default when the claimant brings the ineffective assistance on direct appeal, I don't understand how you get out of the gate here. Do you see the point I'm making? I see your point, Your Honor. The distinction, however, is the focus that Martinez and Trevino both make on the need for investigation, expansion of the record, evidence outside the record in order to get meaningful review. Your interpretation of Trevino going forward in Ohio is that you get two bites of the apple. You could bring direct appeal, ineffective assistance of counsel, do the best you can with it, and then not be procedurally defaulted when you do a whole new IAC claim, even though it's about lack of investigation and mitigation. That would be your theory. Your Honor, I don't know. I don't think that is the case because if counsel are following what the law, as it is developing, are supposed to do, they're not filing the type of IAC claims that depend on evidence outside the record. As Hannah versus Ishii from this court said, mitigation IAC claims necessarily depend on evidence outside the record. Your answer is that going forward, McGuire would not have raised the direct appeal IAC claim. That's your only way of doing this. Certainly the IAC claim, to have meaningful review of this IAC claim, it could only have been properly raised in a post-conviction proceeding. Okay, so just hypothetically, they make the mistake. They do it in direct appeal. Okay, so that's what they do. They decide to do it in direct appeal. What then happens? And it's denied on direct appeal or they forfeit it at some point along the way. You still get the Trevino thing. Your Honor, I don't know. I mean, I think at that point, it would be an ineffective assistance of appellate counsel claim for having raised the claim inappropriately. That's what I wanted to ask. Now I'm a little confused. I thought your whole assumption was that the post-conviction counsel was ineffective for not raising the additional evidence outside the record. Correct. Right? Okay. Not that appellate counsel was ineffective. In fact, I thought your whole claim was divorced from the question of whether direct appeal appellate counsel was effective or not. Correct, Your Honor. Our position is... Now it seems like you're unwilling to say that an error by appellate counsel did not preclude post-conviction counsels being able to succeed. Because if raising the claim without evidence outside the record at the direct appeal stage precluded your ability to raise it on post-conviction review, well then it's the error of appellate counsel which has caused your client to lose rather than the error of post-conviction counsel. But that's not the situation here where there is no contention in the state court that the mitigation IAC claims as litigated in post-conviction proceedings were barred based on raised judicata for having been raised on direct appeal. The issue in McGuire's case specifically... You're assuming that they're not barred. The court didn't say that they were barred because of the raising... You have to assume that because of that we assume that they're not barred. Because if they're barred, the whole thing is analyzed differently, it seems to me. Because the whole thrust of your argument seems to only work if they're not barred. Because if they are barred, it doesn't make much difference whether post-conviction counsel was effective or not. And if we don't care about whether post-conviction counsel was effective or not, then Trevino has nothing to do with this case. Trevino only possibly gives you another bite at the apple under Rule 60B if it's a Trevino case, right? Correct. So you've got to be... I don't see how you can get around assuming that there was the possibility of ineffective assistance of counsel which made a difference on the part of post-conviction trial counsel. Right, and that's the whole crux of our... When Judge Sutton asks you, is there anything post-conviction trial counsel could even have done in view of what appears now to have been an error by direct appeal counsel, you say, I'd take no position on that. I don't see how you can take no position. Don't you have to assume that it's possible to argue ineffective assistance of post-conviction trial counsel even if the claim has been raised, albeit without supporting evidence in the direct appeal? Yes, Your Honor, and that's entirely our point, that the ineffective assistance that matters here is the ineffective assistance of post-conviction counsel, not direct appeal counsel. I was simply answering the question as far as how far Trevino might go for issues of ineffective assistance of appellate counsel. That wouldn't be Trevino. I took Judge Sutton's question to apply regardless of Trevino. Even before Trevino, you still could ask the question,  you could still ask the question, does raising an ineffective assistance of trial counsel on direct appeal without support, without evidence outside of the record support, preclude your ability later to raise that claim on post-conviction review at the trial court level? I don't know. You could ask that. That doesn't assume that at the post-conviction trial court level, appellate counsel was effective or not, so you ought to be able to answer the question without knowledge of how Trevino would be decided. It should just be a question of Ohio law, whether you can raise it once without evidence outside the record and later with evidence outside the record, or whether if you raise it the first time without evidence outside of the record, you still get the chance to raise it again with evidence outside the record. You don't need Trevino to answer that, do you? No, I think that there are... What's the answer? But it's still undecided, even though you don't need Trevino to decide it? I'm saying I don't know that this court has actually decided that issue. What about the Ohio courts? He's right. There has to be a simple answer to this. Can you split it up? Can you do some direct review and effective assistance and then collateral review and effective assistance and go outside the record in the collateral review? What's the answer? The answer, at least according to the Ohio Supreme Court, is that if it's a claim that involves evidence outside the record, then that is a claim that needs to be raised only in PC, that that will not be reviewed on direct appeal. But they're okay with that even if you raise the same claim on direct appeal, i.e. lack of investigation at the mitigation stage.  between a claim that is solely based just on the record when there is no evidence of what counsel actually failed to do. There's no evidence from counsel whether there was any reason to do what they did, which are all necessary bits of information to meaningfully adjudicate an IAC claim for failure to mitigate. I take that answer to be yes. That there is a difference. You don't lose your chance to do it with extra evidence if you try to do it without the evidence the first time. But you seem hesitant to say that's the answer. As this court pointed out in Hannah v. Ishii, petitioners in Ohio are in a quandary because in some certain circumstances, we're darned if we do, we're darned if we don't. It's a matter of guessing sometimes which... That theory doesn't sound darned at all. It sounds like you can do either one or both. And again, I would come back to the difference is whether there is evidence outside the record that is necessary to decide the claim. If it's a claim that has to have that evidence outside the record, under Ohio law it has to be... When it comes to investigation claims, there's no such thing as an investigation claim where there's not more evidence. Correct, Your Honor. And that's exactly the Supreme Court of Ohio's point is that those type of claims are not appropriately raised and will not be reviewed on the merits on direct appeal. No, I mean the point that there's always more evidence. It doesn't mean that you can't raise them on direct appeal. Obviously, if you didn't investigate, that's a pretty easy winner at mitigation. You don't need extra evidence. Well, that's the situation that we had here where there was virtually no investigation over the weekend, but there was virtually no investigation. And the key is that there has to be some evidence in that trial record that would confirm all the other evidence that was uninvestigated and not presented to the jury in order to be able to show deficient performance of counsel and to be able to show the prejudice from that deficient performance of counsel. So our position is that this is a type of claim that could not have been raised. I mean it may have been able to be raised, but could not be given a merits review by the Supreme Court of Ohio based on Ohio Supreme Court law. Other questions? No, thank you, counsel. Thank you, Your Honors. This will be submitted. Please adjourn the court.